**Samuel GIBSON, III, Plaintiff-Appellee,**

v.

**George L. JACKSON, Individually and as Superior Court Judge of Jones County, Georgia, et al., Defendants-Appellants.**

**No. 78–1113.**

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1978.

Frank H. Childs, Jr., Macon, Ga., for Moore, Baker 7 Chapman.

Arthur K. Bolton, Atty. Gen., G. Stephen Parker, Asst. Atty. Gen., Atlanta, Ga., for all other defendants.

Millard C. Farmer, Jr., Atlanta, Ga., Robert Altman, New Orleans, La., for plaintiff-appellee.

Before COLEMAN, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Samuel Gibson, an indigent black male sentenced to death by the State of Georgia for the murder and rape of a white female, filed a state habeas corpus action alleging that his federal constitutional rights had been violated in his earlier criminal trial. A Georgia lawyer filed the petition, in which he alleged that the state court is required to appoint counsel to represent Gibson, and that the state of Georgia is required to provide funds to pay for investi-

gative and witness expenses in his state habeas proceeding. The state court has never formally ruled on this issue. By agreement of the parties, the state habeas action was stayed while petitioner, again represented by the same unpaid counsel who had appeared on his behalf in the state habeas proceeding, filed this federal action pursuant to 42 U.S.C. § 1983, seeking a declaratory judgment that the state is required to afford him appointed counsel and reasonable monetary assistance as a matter of constitutional right.[1] The federal trial court concluded that petitioner had raised five substantial issues in his habeas petition that could not be fairly and fully presented without both the assistance of counsel and funds for investigative and litigation ex-

penses,[2] and, extending the rationale of *Bounds v. Smith*, 1977, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72, granted the relief sought. *Gibson v. Jackson*, M.D.Ga.1977, 443 F.Supp. 239. The defendants appeal, contending, first, that the federal court should have abstained from resolving the issue pending completion of the state habeas process, and, second, that there is no constitutional right to the relief sought. Because we agree that the trial court should have abstained, we do not at this time consider the second issue.

In *Railroad Commission of Texas v. Pullman Co.*, 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, principles of "equity, comity and federalism"[3] led the Supreme Court to fashion the doctrine of federal abstention,[4]

1. Petitioner relies primarily upon the "constitutional right of access to the courts" delineated in *Bounds v. Smith*, 1977, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72. But resolution of the issues will likely require consideration of the Sixth Amendment and of the due process and equal protection clauses of the Fourteenth Amendment. With respect to the Sixth Amendment issue, *compare Dorsey v. Gill*, D.C.Cir.1945, 80 U.S.App.D.C. 9, 148 F.2d 857, *cert. denied*, 1945, 352 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003, *with Smith v. Bennett*, 1961, 365 U.S. 708, 712, 81 S.Ct. 895, 897, 6 L.Ed.2d 39; *see* Note, Discretionary Appointment of Counsel at Post-Conviction Proceedings: An Unconstitutional Barrier to Effective Post-Conviction Relief, 8 Ga.L.Rev. 434 (1974). With respect to due process and equal protection, *see Gardner v. California*, 1969, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601; *Douglas v. California*, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; *Lane v. Brown*, 1963, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; *Smith v. Bennett*, 1961, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39; *Griffin v. Illinois*, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. *Compare Bounds v. Smith, supra*, 430 U.S. at 827–828, 97 S.Ct. at 1497–1498, *with Ross v. Moffitt*, 1974, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341.

2. These contentions are that: (1) petitioner was denied effective assistance of counsel at trial and on appeal, in part because his attorney was subsequently convicted of a drug abuse violation that occurred during his representation of petitioner; (2) the grand jury and petit jury master lists from which the grand and petit jury were selected were unconstitutionally composed, based upon statistical evidence that the district court found makes a prima facie case; (3) his victim was deceased at the time of the rape, and Georgia law defines rape as requiring a living victim; because rape is the

aggravating circumstance requisite to imposition of the death penalty, it may not be imposed; (4) his trial, which began in the morning and lasted until several hours after midnight of that day, at which time the death penalty was imposed, denied him due process of law; and, (5) petitioner's admissions (used as evidence against him) must be believed in their entirety under Georgia law because petitioner could not be convicted without such admissions, and these admissions may provide a defense to the charge of rape. Although the court did not list it with these contentions, petitioner has raised a Fourth Amendment claim. The reasons why experts are needed with respect to these contentions are set forth more fully in the district court opinion. 443 F.Supp. at 244–248.

3. The state court construction may obviate or significantly modify the federal questions seemingly presented, thus avoiding "unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman v. Forssenius*, 1965, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50. *See Juidice v. Vail*, 1977, 430 U.S. 327, 347, 97 S.Ct. 1211, 1223, 51 L.Ed.2d 376 (Stewart, J., dissenting); *BT Inv. Managers, Inc. v. Lewis*, 5 Cir. 1977, 559 F.2d 950, 952.

4. *See generally* P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart and Wechsler's The Federal Courts and The Federal System, 985–987 (2d ed. 1973); D. Currie, Federal Courts: Cases and Materials, 647–692 (2d ed. 1975); G. Gunther, Constitutional Law, 1606–1609 (9th ed. 1975); C. Wright, Law of the Federal Courts, 218–229 (3d ed. 1976); Field, The Ab-

later broadened in *Younger v. Harris,*[5] 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its successors.[6] *Pullman.*-type abstention[7] is, in general, appropriate "in cases presenting a federal constitutional[8] issue which might be mooted or presented in a different posture by a state court determination of pertinent state law."[9] *Colorado River Water Conservation Dist. v. United States,* 1976, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, quoting *County of Allegheny v. Frank Mashuda Co.,* 1959, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163.

 The necessity for abstention is to be determined by principled discretion[10] not doctrinaire adherence; its application must, therefore, be decided on a case-by-case basis.[11] The stay of federal decision is "an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States, id.*[12] Although federal courts should

stention Doctrine Today, 125 U.Pa.L.Rev. 590 (1977); Field, Abstention in Constitutional Cases: The Scope of the *Pullman* Abstention Doctrine, 122 U.Pa.L.Rev. 1071 (1974).

**5.** The Supreme Court has specifically held open the question of whether *Younger* abstention is required when ordinary civil litigation between private parties is pending. *Trainor v. Hernandez,* 1977, 431 U.S. 434, 444 n. 8, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486; *Juidice v. Vail,* 1977, 430 U.S. 327, 336 n. 13, 97 S.Ct. 1211, 1218, 41 L.Ed.2d 376; *Huffman v. Pursue, Ltd.,* 1975, 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482. *See Duke v. Texas,* 5 Cir. 1973, 477 F.2d 244, *cert. denied,* 1974, 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874. As to the applicability of the "civil" label to habeas proceedings, *see Smith v. Bennett,* 1961, 365 U.S. 708, 712, 81 S.Ct. 895, 897, 6 L.Ed.2d 39. *See also Trainor v. Hernandez, supra,* 431 U.S. at 444, 97 S.Ct. at 1918. Because *Pullman* principles require abstention, we need not consider the problems involved in applying *Younger. See Trainor v. Hernandez, supra,* 431 U.S. at 469–470, 97 S.Ct. at 1931, and note 15 (Stevens, J., dissenting). However, because many of the considerations underlying the *Younger* doctrine are relevant here, we refer to *Younger* jurisprudence.

**6.** For a thorough review of current *Younger* jurisprudence, *see* Laycock, Federal Interference with State Prosecutions: The Need for Prospective Relief, 1977 Supreme Court Review 193, *passim.*

**7.** We are not concerned with the other variant of *Pullman* abstention: "where there have been presented difficult questions of state law bearing on policy problems of substantial public import . . . ." *Colorado River Water Conservation Dist., supra,* 424 U.S. at 814, 96 S.Ct. at 1244. *See, e. g., Louisiana Power & Light Co. v. City of Thibodaux,* 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058; *Alabama Pub. Serv. Comm'n v. Southern R. Co.,* 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002; *Burford v. Sun Oil Co.,* 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed.

1424; *BT Inv. Managers, Inc. v. Lewis,* 5 Cir. 1977, 559 F.2d 950, 954–955. Nor are we concerned with the pendency of a duplicative action in state court, *see Will v. Calvert Fire Ins. Co.,* 1978, — U.S. —, 98 S.Ct. 2552, 57 L.Ed.2d 504; *Colorado River Water Conservation Dist., supra,* 424 U.S. at 817–818, 96 S.Ct. at 1246–1247. A federal habeas petition asserting the same substantive claims asserted in state court could not be heard until state remedies are exhausted. *Preiser v. Rodriguez,* 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439.

**8.** Our unwillingness to abstain where no constitutional claim is involved was shown in *Southwest Airlines Co. v. Texas International Airlines, Inc.,* 5 Cir. 1977, 546 F.2d 84, 92, *cert. denied,* 1977, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93. *See also* Currie, *supra* note 4, 669–682.

**9.** The doctrine has, of course, been the subject of varying formulations. *See, e. g., Bellotti v. Baird,* 1976, 428 U.S. 132, 147, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844, quoting *Harrison v. NAACP,* 1959, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152; *compare Canton v. Spokane School District, No. 81,* 9 Cir. 1974, 498 F.2d 840, 845, *with Ahrensfeld v. Stephens,* 7 Cir. 1975, 528 F.2d 193, 196–197.

**10.** *Harman v. Forssenius, supra; Ross v. Houston Independent School District,* 5 Cir. 1977, 559 F.2d 937, 942; *Frederick L. v. Thomas,* 3 Cir. 1977, 557 F.2d 373, 382; *Ahrensfeld v. Stephens,* 7 Cir. 1975, 528 F.2d 193, 196; *Hill v. City of El Paso, Texas,* 5 Cir. 1971, 437 F.2d 352.

**11.** *Baggett v. Bullitt,* 1964, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377; *Ahrensfeld, id.*

**12.** *See also Propper v. Clark,* 1949, 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480 ("special circumstances"). *See generally* Pell, Abstention—A Primrose Path by Any Other Name, 21 DePaul L.Rev. 926 (1972).

seek, whenever possible, to resolve a controversy without reaching the question of the constitutionality of federal or state action, this self-restraint "does not alone justify abstention." *Colorado River Water Conservation Dist. v. United States, supra,* 424 U.S. at 815 n. 21, 96 S.Ct. at 1245. See *Harman v. Forssenius,* 1965, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50; *Baggett v. Bullitt,* 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377. When declaratory relief is sought with respect to issues presented in a pending state civil proceeding, "a vigorous balancing test is contemplated, including the plaintiff's cost of having to proceed through the state court system, and some judgment as to how intrusive or disruptive a federal decree is likely to be to the ongoing state civil proceeding." *Diaz v. Stathis,* 576 F.2d 9, 1 Cir. 1978. The principle is not, however, limited to a single species of cases. Even when suit is brought for violation of federal civil rights, pursuant to Section 1983, a proceeding that does not require the exhaustion of state remedies as a prerequisite to federal action,[13] federal courts may refrain from decision until a related state court proceeding is resolved.[14]

▪ Federal courts usually await state court action only if a state court determina-tion of state law may moot or reshape the federal constitutional issue. Although the record when counsel appeared to seek a postponement of state proceedings indicates that the state court was not receptive to the request, it has not acted upon or even been presented with a specific demand for relief; it may yet rule favorably upon this plea. Because the state's attorney informed us, in oral argument, that he would like to see petitioner represented by counsel, it is possible that the state attorney general may join in petitioner's motion, a development that would enhance its prospects.[15] Even if the trial court considers and denies such relief, the Georgia Supreme Court may rule in petitioner's favor notwithstanding its prior jurisprudence rejecting the right to appointed counsel in habeas proceedings.[16] The Georgia Supreme Court has never considered the issue with respect to a petitioner who faces the death penalty,[17] nor has it considered the effect, if any, of *Bounds v. Smith, supra,* which the federal trial court found persuasive.[18] Finally, the Georgia Supreme Court may, without a complete departure from its prior jurisprudence, decide that, under the circumstances of this case, involving both imposition of the death penalty and complex legal issues, due proc-

---

**13.** *McNeese v. Board of Education,* 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; *Monroe v. Pape,* 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492. *But see Eisen v. Eastman,* 2 Cir. 1969, 421 F.2d 560 (Friendly, J.), *cert. denied,* 1970, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75, and *Currie, supra* note 4, 688–690.

**14.** *See Boehning v. Indiana St. Employees Assoc., Inc.,* 1975, 423 U.S. 6, 8, 96 S.Ct. 168, 170, 46 L.Ed.2d 148. *But see Trainor v. Hernandez, supra,* 431 U.S. at 453–456, 97 S.Ct. at 1923–1925 (Brennan, J., dissenting).

**15.** As we stated in *Ardister v. Hopper,* 5 Cir. 1974, 500 F.2d 229, 233, "[W]e feel confident that the State of Georgia will wish to appoint counsel to represent [petitioner] at any further habeas corpus proceedings the State may choose to conduct. Comity would surely be well served by every effort to secure a complete presentation and consideration of the remaining issues in that forum."

**16.** *McCorquodale v. Stynchcombe,* 1977, 239 Ga. 138, 236 S.E.2d 486, 488; *Kramer v. Hopper,* 1975, 234 Ga. 395, 216 S.E.2d 119; *Hop-*

*kins v. Hopper,* 1975, 234 Ga. 236, 215 S.E.2d 241; *Moye v. Hopper,* 1975, 234 Ga. 230, 214 S.E.2d 920; *McClure v. Hopper,* 1975, 234 Ga. 45, 214 S.E.2d 503; *O'Neal v. Caldwell,* 1974, 231 Ga. 608, 203 S.E.2d 191, and cases cited in Wilkes, A New Role for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part II), 9 Ga.L.Rev. 13, 76, n. 298 (1974).

**17.** In *McCorquodale, supra,* the death penalty was imposed, but there was retained counsel. The court stated that although there was no requirement for appointment of counsel, here the denial of a continuance did not constitute a denial of effective assistance from the retained counsel. In *Kramer v. Hopper, supra,* and *Jones v. Caldwell,* 1973, 230 Ga. 775, 199 S.E.2d 248, the death penalty was imposed but was converted to life imprisonment before the court considered the appointment of counsel issue.

**18.** *See United States ex rel. Reis v. Wainwright,* 5 Cir. 1976, 525 F.2d 1269, 1272; *Glenn v. Askew,* 5 Cir. 1975, 513 F.2d 61.

## 1050

ess requires counsel and state financial assistance. We note that, in less compelling cases,[19] two justices of that court have stated the opinion that this approach should be adopted.

The state trial court or state supreme court may deny petitioner's requests for assistance but nonetheless find his substantive claims meritorious, hence mooting the procedural issues. Moreover, the issue here raised may be moot in the literal sense: the petitioner is presently represented by counsel in the state court and that able lawyer, who appeared on petitioner's behalf before us, may continue in the task he has assumed pro-bono. The likelihood that the issues now presented will remain for decision when the state proceeding is concluded is so uncertain at this moment that an immediate decision borders on being advisory in nature.[20]

■ Petitioner asks this court to inform the state tribunal of the procedural requirements imposed upon it by the federal Constitution while that tribunal is in the process of charting its own course. "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the United States Supreme Court]." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 1970, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234. *See Lamb Enterprises, Inc. v. Kiroff*, 6 Cir. 1977, 549 F.2d 1052, 1058, *cert. denied*, 1977, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064; *Louisville Area Inter-Faith Committee v. Nottingham Liquors, Ltd.*, 6 Cir. 1976, 542 F.2d 652, 654. As we recently noted in *Williams v. Rubiera*, 5 Cir. 1976, 539 F.2d 470, *cert. denied*, 1977, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246, where petitioner sought a declaration of his right to appointed counsel in a state welfare prosecution,

"If relief were granted . . . it would have the effect of a federal court telling the state court how to run an ongoing criminal prosecution, i. e., whether it could constitutionally try the defendant without appointed counsel." 539 F.2d at 473. *Compare Cleaver v. Wilcox*, 9 Cir. 1974, 499 F.2d 940. Abstention will avoid such a "continuous federal supervision of state functioning." Friendly, Federal Jurisdiction, A General View, 95 (1973).

"[P]iecemeal results and delay" are usually considered attendant to abstention, *Ross v. Houston Independent School Dist.*, 5 Cir. 1977, 559 F.2d 937, 942, but those problems would be exacerbated by the entertainment of claims like those presented here. We are conscious of the serious nature of this case, and we do not approach the issue by the traditional slippery slope argument. But to act here and now is to indicate to persons engaged in other death sentence cases that federal courts will, by the declaratory judgment device, monitor a myriad of state habeas claims presenting issues that apparently pose federal constitutional questions. If state trials are not stayed pending submission of such issues to federal courts, the possibilities of inconsistent judgments from both forums promises increased friction. If state trials are stayed, whether by stipulation or otherwise, while these issues are litigated over the course of several years through the tiers of the federal system, the possibilities of delay and piecemeal resolution are interminably expanded. Such an encroachment of the federal government into ongoing state proceedings would be unseasonable and obtrusive.[21] The "delay and expense to which application of the abstention doctrine inevitably give rise," *Bellotti v. Baird*, 1976, 428 U.S. 132, 150, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844, quoting *England v. Medical Examiners*, 1964, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d

19. *See Sims v. Caldwell*, 1973, 231 Ga. 377, 202 S.E.2d 70 (Gunter & Ingram, JJ., dissenting). *See also Moye v. Hopper, supra; O'Neal v. Caldwell, supra*; *Hinton v. Caldwell*, 1974, 231 Ga. 584, 203 S.E.2d 185; *Grace v. Caldwell*, 1973, 231 Ga. 407, 202 S.E.2d 49.

20. *See Currie, supra* note 4, 88–103.

21. *See Huffman v. Pursue, Ltd., supra*, 420 U.S. at 608–610, 95 S.Ct. at 1210–1211.

440, 446,[22] would be even more acute if we did not abstain here.

Although this case does not present the orthodox abstention situation,[23] where a state court interpretation of a facially ambiguous state statute may obviate alleged constitutional infirmities in that statute, it is probable that our abstention at this time will eliminate the momentous and difficult federal constitutional question sought to be presented.[24] Conjoined with considerations of comity, of avoiding piecemeal litigation, and of avoiding a precedent for retarding pending state court litigation, that factor, not of itself sufficient, militates in favor of our staying our hand.

We are mindful that "[a]ny consideration of abstention . . . must take into primary account its effect on the rights sought to be protected in the court asked to stay its hand." *Ross v. Houston Independent School Dist., supra,* 559 F.2d at 942. For the reasons we have indicated previously, it is possible that allowing the state proceeding to function uninterrupted will result either in the state's compliance with petitioner's requests or in the constitutional issue being moot for some other reason. If these do not occur and if petitioner is still aggrieved after completion of the state proceeding, he may then obtain the appropriate federal review.[25]

Accordingly, we VACATE the judgment of the district court, and, as an appropriate procedure[26] in instances of abstention pursuant to *Pullman* and its progeny, we REMAND for the district court to retain jurisdiction pending completion of the state proceedings.

GEE, Circuit Judge, specially concurring, with whom COLEMAN, Circuit Judge, joins:

Although I join fully in Judge Rubin's able opinion for the court, I write to express a particular view about a possible construction of one aspect of it, its several references to the special circumstance of a death sentence.

Since *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and continuing through *Lockett v. Ohio,* —— U.S. ——, 98 S.Ct. 2981, 57 L.Ed.2d —— (1978), and *Bell v. Ohio,* —— U.S. ——, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), the Court's last formal expressions on the subject, questions of how, for what crime, and indeed *whether* the death penalty can be inflicted have bemused and divided the Court. It may even be that the Court is in process of hedging this penalty about with such obstacles that, as a practical matter, it cannot be carried out. Unless I am mistaken, however, this has not yet happened.

The casting aside of such a measure by such a process would not be foreign to traditions of common-law development, though perhaps somewhat novel in constitutional construction. This present process is

---

**22.** *See also Lake Carriers' Ass'n v. MacMullan,* 1972, 406 U.S. 498, 509, 92 S.Ct. 1749, 1758, 32 L.Ed.2d 257; *Kusper v. Pontikes,* 1973, 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260.

**23.** *See Frederick L. v. Thomas,* 3 Cir. 1977, 557 F.2d 373, 383.

**24.** It has been suggested that abstention is appropriate only where the issue of state law is uncertain. *Harman v. Forssenius, supra,* 380 U.S. at 534, 85 S.Ct. at 1182; *BT Inv. Managers, Inc. v. Lewis, supra,* 559 F.2d at 954. Hence if the state statute is clear on its face, and the only basis for abstention is that it might violate the state constitution, there may be an insufficient basis for abstention. *Wisconsin v. Constantineau,* 1971, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515; *BT Inv. Managers, Inc., id. Compare with Askew v. Hargrave,* 1971, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196

and *Reetz v. Bozanich,* 1969, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68. Here, however, there is a "realistic promise of avoiding constitutional issues," *Ross v. Houston Independent School District, supra,* 559 F.2d at 942, for a number of reasons other than the state court providing relief on the basis of the state constitution. *See also Currie, supra* note 4, at 661, citing ALI approval of abstention when there is a *"likelihood* that the necessity for deciding a substantial question of federal constitutional law may thereby be avoided . . . .,"* if other factors are present. (Emphasis supplied).

**25.** *See, e. g., Boyd v. Dutton,* 1972, 405 U.S. 1, 3, 92 S.Ct. 759, 760, 30 L.Ed.2d 755; *Jennings v. Illinois,* 1951, 342 U.S. 104, 72 S.Ct. 123, 96 L.Ed. 119.

**26.** *See Reetz v. Bozanich,* 1970, 397 U.S. 82, 85, 87, 90 S.Ct. 788, 789–790, 25 L.Ed.2d 68.

attended, however, with a most unfortunate consequence in our time's particular circumstances: that while, cudgelled by the speedy trial acts, courts process humdrum offenses with ever-increasing speed—the imposition of penalties for their commission not being such as to occasion much judicial squeamishness—that category of crimes which may be dispassionately described as heinous progress ever more slowly from commission to punishment. Intending no comment on appellee Gibson, since I can know little or nothing of what influences, internal or external, may have pressed upon him, it is impossible to describe the act which he undisputedly committed here in terms which do not revolt and horrify. To say no more, as to the facts of the crime the only issue now presented is whether his victim died of the gunshot wounds which he inflicted upon her before, while, or after he completed sexually assaulting her. I do not in the least suggest that this circumstance diminishes by a straw Gibson's right to the most searching and redoubtable defense. What I do suggest is that we should not be seen as creating a particular category of jurisprudence especially favorable to people who commit such acts because of the consequent imposition upon them of the death penalty.

That penalty either may or may not be constitutionally inflicted. I, for one, confess that I do not know the real answer to that question as matters presently stand. But insofar as our opinion may be read as indicating that the penalty inflicted here triggers application of a special complex of safeguards inapplicable to one who has received a lesser sentence—and I do not think it need be read in this fashion—I do not agree.

ADDENDUM IN WHICH CIRCUIT JUDGES COLEMAN AND GEE DO NOT JOIN:

ALVIN B. RUBIN, Circuit Judge.

I add my further views with respect to the observation that abstention will not im-

peril the petitioner's substantive rights. If the state court grants the writ sought, then the method by which the relief is obtained will be inconsequential. Petitioner's ends will have been accomplished. Whether or not the writ is granted, the state may, as the opinion points out, afford petitioner the procedural assistance that he seeks. If the state court not only fails to provide such procedural assistance but also denies a writ, petitioner will have the right to apply to a federal court. At that time, his constitutional claims can be fully heard.

I.

If the failure to provide counsel or other assistance results in less than a full and fair state court proceeding, petitioner will be entitled to an evidentiary hearing *de novo* in federal court. 28 U.S.C. § 2254; *Boyd v. Dutton,* 1972, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755; *Townsend v. Sain,* 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; *Jackson v. Estelle,* 5 Cir. 1978, 570 F.2d 546. In this complex matter, petitioner would at that time have a statutory right[1] to counsel, 18 U.S.C. § 3006A(g), and, if the need for expert witnesses is shown, federal funds for their services. 18 U.S.C. § 3006A(e)(1).

Even if the denial of counsel does not per se result in less than a full and fair state court hearing, see, e. g., *Williams v. Smith,* 5 Cir. 1970, 434 F.2d 592, if Gibson is correct in his claims, he will be entitled to an evidentiary hearing *de novo* in federal court pursuant to 28 U.S.C. § 2254(d)(5), which provides that state fact-finding is not preclusive if "the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding." *See Lane v. Henderson,* 5 Cir. 1973, 480 F.2d 544, 545. This exception to the conclusive effect of state court fact-finding is distinct from, and in addition to, those provided for failure to provide a full

---

1. Although the appointment of counsel is discretionary under this provision, *see Vandenades v. United States,* 5 Cir. 1975, 523 F.2d 1220, 1225, the circumstances of this case would compel appointment.

and fair hearing. *See* 28 U.S.C. § 2254(d)(2), (3) and (6). Presumably, 28 U.S.C. § 2254(d)(7) would compel a new federal hearing if the state failed to provide any other form of constitutionally guaranteed assistance.

## II.

Petitioner has raised a Fourth Amendment claim challenging the admissibility of evidence seized in an allegedly unlawful fashion. The trial court concluded that under *Stone v. Powell,* 1976, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, the state court determination would be conclusive with respect to his Fourth Amendment claim even if Gibson has no counsel in that proceeding. *Gibson v. Jackson,* M.D.Ga.1977, 443 F.Supp. 239, 243. However, *Stone* does not erect such a wall; it provides for conclusive effect only if the petitioner has been afforded "an opportunity for full and fair litigation of [his] Fourth Amendment claim." 428 U.S. at 482, 96 S.Ct. at 3046.

In *O'Berry v. Wainwright,* 5 Cir. 1977, 546 F.2d 1204, *cert. denied,* 1977, 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096, we considered whether there is any difference between this standard and the criteria governing state court conclusions with respect to other constitutional claims, set forth in *Townsend v. Sain,* 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. We concluded that, if a difference exists, more exacting standards are required by *Stone* ; hearings that are "full and fair" for purposes of *Townsend* may not be "full and fair" for purposes of *Stone.*

*Townsend* is concerned only with the adequacy of state fact-finding; state conclusions as to federal law may not be given binding effect regardless how perfect the procedure by which they are determined. *Townsend, supra,* 372 U.S. at 318, 83 S.Ct. at 760; *Lockett v. Blackburn,* 5 Cir. 1978, 571 F.2d 309. *Stone,* however, makes state court determinations conclusive with respect both to legal and factual conclusions. Hence, the state procedure must be full and

fair with respect to the development of legal contentions as well as with respect to evidentiary determinations. *O'Berry, supra,* 546 F.2d at 1211.

In *O'Berry* we concluded that, because of the finality that results from an "opportunity for full and fair litigation" under *Stone,* it would "be rash indeed for us to borrow wholesale the *Townsend* formula for use in the *Stone* situation, simply because the wording of the formulas used in each case is similar." [2] 546 F.2d at 1212. We need not paint with a narrower brush here. If the actual hearing is not "full and fair" for purposes of *Townsend, a fortiori* it is not "full and fair" for purposes of *Stone.* If petitioner is entitled to a hearing *de novo* under the *Townsend* standard, he is entitled to such a hearing with respect to his Fourth Amendment contentions under *Stone.* If the state court fails to provide him a meaningful opportunity to be heard, he cannot be prejudiced with respect to either.

The court in *Stone* was concerned only with the "opportunity" for full and fair *litigation,* not with whether a full and fair *hearing* was actually had. The difference is concerned only with issues of waiver. *Stone* dictates that, if there is a deliberate by-pass or waiver of Fourth Amendment contentions, no federal hearing is warranted even if no state hearing whatsoever was held. *O'Berry, supra,* 546 F.2d at 1213–1214. *Compare Fay v. Noia,* 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; or, *Henry v. Mississippi,* 1965, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408; *see* Constitutional Law—Criminal Procedure—Circuits Split over Application of *Stone v. Powell's* "Opportunity for Full and Fair Litigation," 30 Vand.L.Rev. 881 (1977).

It appears from the record that petitioner did not raise his Fourth Amendment contention at trial; for that reason, he may be prevented from raising this claim in federal court by *Stone* and *O'Berry.* Additionally, petitioner suggests that he may be barred from raising constitutional claims relating

---

**2.** We did state, "we see no need to ignore the *Townsend* standard when it may shed some

light on the problem at hand." 546 F.2d at 1212.

to the composition of the grand jury and the admissibility of his confession because he did not raise them by motion before trial. *See Davis v. United States,* 1973, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216; *Wainwright v. Sykes,* 1977, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594; *Francis v. Henderson,* 1976, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149; Spritzer, Criminal Waiver, Procedural Default and the Burger Court, 126 U.Pa.L.Rev. 473, 497–514 (1978). It is not readily apparent that those claims may now be raised in the state forum if they are barred in federal court. If they cannot be raised ·in state court, petitioner will not have been prejudiced by the lack of assistance with respect to them. If they may be raised only in state court and petitioner is entitled, as a matter of constitutional right, to counsel or other assistance, then appropriate relief may be provided through a civil rights action such as the present one.[3] Ultimately, petitioner will have the opportunity to attempt to establish in this forum, with the assistance of counsel, that any claim was not waived by the failure to raise it. If a constitutional right exists to assistance of counsel in proving that there is no forfeiture of a claim under a more congenial state standard, this· court can provide appropriate relief. Although "[t]he federal courts are not empowered . . . to dictate the type of hearing which is to be conducted by the state courts," *Dixon v. Beto,* 5 Cir. 1973, 472 F.2d 598, 599, we are authorized, indeed required, to ensure that constitutional rights are honored in state habeas proceedings. *See, e. g., Hart v. Eyman,* 9 Cir. 1972, 458 F.2d 334, 340, *cert. denied,* 1972, 407 U.S. 916, 92 S.Ct. 2441, 32 L.Ed.2d 691; *Buchanan v. United States ex*

*rel. Reis,* 5 Cir., 1967, 379 F.2d 612; *see also Young v. Ragen,* 1949, 337 U.S. 235, 238, 69 S.Ct. 1073, 1074, 93 L.Ed. 1333; Note, Effect of the Federal Constitution in Requiring State Post-Conviction Remedies, 53 Col. L.Rev. 1143 (1953). In sum, the chronology of collateral review will not preclude this court from ensuring that petitioner is afforded, either in this forum or another, all that the Constitution guarantees him.

### III.

There may be contentions based solely on state law that petitioner will seek to develop in state court. He is rightly concerned that he may be unable properly to do so without a lawyer. Theoretically, such state law claims may not be cognizable should he later attempt to present them as grounds for a federal habeas writ because they do not involve constitutional rights or "fundamental defects." *See Thor v. United States,* 5 Cir. 1978, 574 F.2d 215, 218–219. However, it is difficult to hypothesize an alleged error in the trial proceedings of sufficient consequence that it would, if proved, compel release from state custody yet would not be cognizable within the scope of the writ.

The court has held that the denial of counsel in a post-conviction proceeding may not be raised by way of a Section 2254 petition.[4] *Ardister v. Hopper,* 5 Cir. 1974, 500 F.2d 229, 233. This is because the denial of counsel at that stage would not be a basis, in itself, for release from state custody. It could not affect the procedure by which the petitioner was convicted. However, the denial of counsel may be the basis for considering *de novo* the determinations

---

**3.** For example, it may be determined that petitioner has no constitutional right to raise a particular contention in federal or state court, but if either court allows him to raise that contention, he may have a constitutional right to assistance with respect to it. *See, e. g., Douglas v. California,* 1963, 372 U.S. 353, 355–356, 83 S.Ct. 814, 815–816, 9 L.Ed.2d 811; *Smith v. Bennett,* 1961, 365 U.S. 708, 713–714, 81 S.Ct. 895, 898, 6 L.Ed.2d 39. I express no opinion with respect to the merits of this view, but note only that, if it is adopted, petitioner will not be prejudiced.

**4.** To the extent that the court in *Ardister* purported to reach the merits of the right to counsel issue, its decision, like those in *Abraham v. Wainwright,* 5 Cir. 1969, 407 F.2d 826; *Stanley v. Wainwright,* 5 Cir. 1969, 406 F.2d 8, and *Queor v. Lee,* 5 Cir. 1967, 382 F.2d 1017, is not dispositive because it did not consider the effect, if any, of the imposition of the death penalty, or of the Supreme Court decision in *Bounds v. Smith,* 1977, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72.

made by the state court. The denial may be raised in the course of presenting a Section 2254 petition for purposes of determining the effect, if any, to be given to the state court's conclusions. Additionally, the failure to provide counsel with respect to any contention that is not within the scope of the writ may be raised by way of a civil rights action such as the present one, at the appropriate time. (Whether it can be successfully raised is the question that we abstain from considering.) Hence, it is difficult to perceive how petitioner can be prejudiced even if we assume that the worst from his perspective will materialize.

## IV.

It should be apparent that, for the State of Georgia to require petitioner to proceed at this time without counsel and other assistance may make another full federal proceeding necessary at further expense to the state and with unavoidable delay. Most states now provide lawyers for indigents in such cases.[5] Although Georgia statutes make no provision for counsel, the Georgia bar has, without compensation, often provided most able legal assistance to indigents. Under these circumstances, it appears to me that both justice and prudence point the path that the state prosecutor should suggest and that the state court should take. If, as a result of their failure to do so, the petitioner's federal constitutional rights are violated, the federal forum will be open.

---

5. At least 34 states have provided for the appointment of counsel in such cases either by statute or specific court rule. Note, Discretionary Appointment of Counsel at Post-Conviction Proceedings: An Unconstitutional Barrier to Effective Post-Conviction Relief, 8 Ga.L.Rev. 434, 453 (1974).