**Johnny Mack WESTBROOK, Petitioner,**

v.

**Walter ZANT, Warden, Respondent.**

**Civ. A. No. 81–37–MAC.**

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 17, 1983.

Millard Farmer, Atlanta, Ga., for petitioner.

Susan Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent.

OWENS, Chief Judge:

In *Westbrook v. Zant,* 704 F.2d 1487 (11th Cir.1983), the Eleventh Circuit Court of Appeals affirmed in part, reversed in part, and remanded a portion of this court's order denying petitioner's application for habeas relief under 28 U.S.C. § 2254. In remanding petitioner's case the circuit court instructed this court as follows: (1) as to petitioner's conviction, an evidentiary hearing is to be held wherein it is to be determined if petitioner's trial counsel provided ineffective assistance due to a conflict of interest; and (2) as to petitioner's death sentence, the writ is to be issued vacating petitioner's sentence, subject to the state's right to resentence within a reasonable time.

### Ineffective Assistance—Conflict of Interest

Petitioner represented to the circuit court that his appointed trial counsel, Denmark Groover, Jr. of Macon, provided ineffective assistance of counsel in that he failed to challenge the composition of the Jones County grand and traverse jury pools as constituted at the time of petitioner's trial. This omission, petitioner maintained, was due to a conflict of interest arising from Groover's representation of Jones County in the then pending case of *Gibson v. Jackson,* 443 F.Supp. 239 (M.D. Ga.1977), *rev'd,* 578 F.2d 1045 (5th Cir. 1978) (hereinafter referred to as *Gibson I* ).

It is clear that the circuit court made no finding as to whether Groover represented Jones County in *Gibson I.* The remand states:

> Because the conflict of interest theory was not presented to the state courts and no evidentiary hearing was held in the district court, no record exists to evaluate Westbrook's claims. We therefore remand to the district court with directions to hold an evidentiary hearing. [Citations omitted]. The hearing should determine if Westbrook's appointed attorney represented Jones County's interests in the *Gibson v. Jackson* litigation. If so, the petition must be granted and Westbrook's convictions set aside.

> \* \* \* \* \* \*

> We emphasize that the issue is ... whether his attorney, in view of the alleged conflicting representations, could have raised the challenge without damaging the interests of another client.

704 F.2d at 1499 & n. 14. The court's opinion also reveals that its position on the conflict of interest issue was contingent upon the accuracy of representations by petitioner. The court prefaced its propositions as follows:

> *According to Westbrook,* the representation of Jones County created an impermissible conflict of interest because it was his [Groover's] duty to defend potential lawsuits challenging official actions of the county, such as the constitutionality of the county jury commission's procedures in selecting the grand and traverse jury pools.

704 F.2d at 1497–98 (emphasis added).

> *If* Westbrook's allegations are indeed fact, his appointed attorney's simultaneous representation of Jones County in a lawsuit challenging the composition of the county's jury lists created an actual conflict of the type described in *Baty* [*v. Balkcom* 661 F.2d 391 (5th Cir.1981) ].

*Id.* at 1499 (emphasis added).

The issue before this court therefore is whether an *actual* conflict of interest existed such that Groover could not have raised a jury composition claim at petitioner's trial without damaging the interests of Jones

County in *Gibson I* or in any other context. The parties have agreed that the deposition testimony of Groover may be used by the court in lieu of an evidentiary hearing. After reviewing this deposition and the briefs of counsel for both parties, the court makes the following findings.

### Findings of Fact

1. Denmark Groover, Jr., served as petitioner's appointed trial counsel.

2. At the time of petitioner's trial, Groover was in partnership with Frank H. Childs, Jr., who at that time also served as County Attorney for Jones County, Georgia.

3. During petitioner's trial, the action of *Gibson v. Jackson*, 443 F.Supp. 239 (M.D. Ga.1977), *rev'd*, 578 F.2d 1045 (5th Cir. 1978) (*Gibson I*) was pending in the United States District Court for the Middle District of Georgia. The defendants in *Gibson I* included the County Commissioners of Jones County, who were represented by Frank Childs.

4. Denmark Groover made at least one appearance on behalf of the Jones County Board of Commissioners in *Gibson I*, and did so during a period of illness sustained by Childs.

5. *Gibson I* was a declaratory judgment action involving the issue of whether the Constitution required any of the defendants therein to compensate an attorney representing an indigent petitioner in a state post-conviction proceeding.

6. Childs' representation of Jones County in *Gibson I* was to the effect that the State, rather than Jones County, should appropriate the funds for such appointed counsel.

7. An issue which the indigent plaintiff in *Gibson I* wished to obtain funds to investigate and pursue in his state habeas proceeding was the constitutionality of the Jones County Jury Commissioner's jury selection procedures. However, the constitutionality *vel non* of such procedures or of the composition of the jury list was not at issue in *Gibson I*. This issue did not arise until after *Gibson I*, and culminated in the Eleventh Circuit's recent decision in *Gibson v. Zant*, 705 F.2d 1543 (11th Cir.1983) (*Gibson II*).

8. When the issue of the constitutionality of the Jones County jury selection procedures arose in *Gibson II*, the validity of those procedures was defended by the Georgia Attorney General, not the attorney for Jones County. The Jones County attorney's client is the Board of County Commissioners;[1] the Board of County Commissioners is in no way responsible for assembling jury lists. Under Georgia law, jury lists are assembled by the local board of jury commissioners, which is impaneled by the chief judge of the county superior court. O.C.G.A. § 15–12–20 (Michie 1982).

---

1. The duties of the Jones County attorney are set forth in a Local Act passed by the General Assembly:

> Section 13. The board shall have authority to employ a county attorney whose duties shall be to advise the board, its chairman and the county administrator on all legal matters coming before them and to represent the county in all matters pending in the courts when the county is a party. Said attorney shall be appointed for a term not to exceed twelve months, and at such compensation as the board may agree upon. Whenever it is deemed necessary, the board may appoint additional counsel to assist the county attorney.

An Act to Create a New Board of Commissioners of Jones County, 1974 Ga.Laws 2162, 2169. The county attorney has no authority to prosecute criminal actions on behalf of the state. Such duties reside in the appropriate District Attorney or State Court Solicitor. O.C.G.A. §§ 15–7–1 *et seq.*, 15–18–6 (Michie 1982). While a county attorney is authorized to prosecute violations of county ordinances on behalf of the county, O.C.G.A. §§ 15–10–62, 15–10–66 (Michie 1983 Supp.), the court does not perceive this authority to be a circumstance creating a conflict of interest in this case. Finally, the provisions of O.C.G.A. § 42–6–5(g) are not relevant in this action. Section 42–6–5(g) provides that county attorneys are to defend state habeas corpus actions commenced by prisoners while in temporary custody of the county sheriff. Since Samuel Gibson was in the custody of the State Diagnostic and Classification Center—not the Jones County Sheriff—at the time he commenced the state action which gave rise to *Gibson I*, Childs was never obligated to defend nor did he defend the state's interest on the merits of Gibson's state or federal habeas claims.

Thus, as an agent of the state judiciary (as opposed to the county), the actions of the jury commissioners are defended by the state attorney general.

9. Groover has never defended the constitutionality of the Jones County jury selection procedures, nor was it his partner, Frank Childs', duty to do so.

10. Petitioner was indicted by a grand jury which had a racial composition of eight blacks and fourteen whites. He was tried by a traverse jury which had a racial composition of six blacks and six whites.

11. Groover, as petitioner's trial counsel, did not challenge the Jones County jury selection procedures.

### Conclusions of Law

■ It is well established that an attorney may not represent a criminal defendant when he or a member of his firm either represents or has previously represented the government in the prosecution of the defendant. *United States v. Kitchin,* 592 F.2d 900 (5th Cir.1979). However, in order for a conflict of interest to amount to a constitutional denial of effective assistance of counsel the conflict must be "actual," such that the presentation of evidence on behalf of one client would damage the interests of another. *Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir.1981). In order to assess petitioner's claim it is therefore necessary to define the interests of Groover and Childs' client, the Jones County Board of Commissioners, vis-a-vis petitioner. Was it Groover or Childs' duty, as the petitioner argued to the circuit court, to "defend ... lawsuits challenging ... the constitutionality of the county jury commission's procedures in selecting the grand and traverse jury pools"? *Westbrook v. Zant,* 701 F.2d at 1497–98. Absolutely not. Not only was the constitutionality of the jury pools not at issue in *Gibson I,* but, more importantly, it would never have been County Attorney Childs' duty to defend the validity of those pools. The jury commissioners were not county officials, nor were they agents or appointees of the county Board of Commissioners. Under Georgia law they were state judicial officers, O.C.G.A. § 15–12–20 (Michie 1982), responsible to the superior court, and their actions were defended by the state attorney general. The office of county attorney has no authority to represent the state in criminal proceedings. See authorities discussed in footnote 1, *supra.* Groover and Childs' sole involvement in *Gibson I* went to the issue of whether the county or the state would be obligated to pay for legal representation of indigent state habeas corpus petitioners. Although one of the issues which the petitioner in *Gibson I* wished to present to the state habeas court was jury composition, neither Groover nor Childs in *Gibson I or II* defended or had the obligation to defend the validity of the county jury system. The jury commissioners were the "clients" of the attorney general, not the county attorney. Thus, while petitioner's appointed attorney "represented Jones County's interests in the *Gibson v. Jackson* litigation," 704 F.2d at 1499, it is clear that no actual conflict existed under *Baty,* for Groover certainly "could have raised the [jury composition] challenge without damaging the interests of another client," *i.e.,* the Jones County Board of Commissioners. *Id.* at 1499 n. 14. Petitioner has failed to prove a conflict of interest amounting to a denial of effective assistance of counsel.

■ Having disposed of the conflict of interest claim, the court turns finally to the question of whether Groover's failure to raise the jury composition issue was ineffective in itself, given the eventual invalidation of the jury selection procedures in *Gibson II.* As noted in the findings of fact, petitioner's grand jury contained eight blacks, and his trial jury was evenly divided between blacks and whites. Groover testified by deposition that while the jury selection issue crossed his mind, he was pleased with the composition of petitioner's actual juries. He stated that he did not want any more blacks than he received, for fear that blacks are sometimes more severe on fellow blacks than are whites. (Deposition at 29–30). He also stated that he did not desire any more women than he actually

received (the number is undisclosed) because petitioner was charged with rape as well as murder, and gruesome photographs were anticipated. (Deposition at 29–30). In light of Groover's extensive experience in the field of criminal litigation, this court is convinced that these strategic decisions were reasonably calculated to afford effective representation, and did not deny petitioner any rights secured by the Constitution. *See, Corn v. Zant,* 708 F.2d 549, 561 (11th Cir.1983); *Robinson v. United States,* 448 F.2d 1255, 1255–56 (8th Cir. 1971). Petitioner's claim for relief based on ineffective assistance of counsel is DENIED.

### *Petitioner's Sentence*

The Eleventh Circuit Court of Appeals held that the trial court's resentencing instructions were constitutionally inadequate, 704 F.2d at 1503, and ordered the writ to issue, subject to the state's right to resentence petitioner within a reasonable time. *Id.* at 1507. Having made the mandate of the circuit court the order of this court, it is hereby ORDERED that the writ of habeas corpus be issued, vacating petitioner's death sentence, subject to the respondent's right to resentence petitioner within six months from the date of this order.